# EXHIBIT A

**THIS IS AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6)**
**ARTICLE XVI OF THE TEXAS CONSTITUTION**

# TEXAS HOME EQUITY NOTE
## (Cash Out - Fixed Rate - First Lien)

| January 24, 2005 | Orange | California |
|---|---|---|
| [Date] | [City] | [State] |

718 SAINT EDWARDS GREEN DRIVE, HOUSTON, TX 77015
[Property Address]

Loan Number: ▨▨▨▨▨▨▨▨▨▨▨

**1. BORROWER'S PROMISE TO PAY**

This is an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit").

In return for a loan that I have received, I promise to pay U.S. $ **92,000.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

I understand that this is not an open-end account that may be debited from time to time or under which credit may be extended from time to time.

The Property described above by the Property Address is subject to the lien of the security instrument executed concurrently herewith (the "Security Instrument").

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **8.150 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law. Nothing in this Note or the Security Instrument shall entitle the Note Holder upon any contingency or event whatsoever, including by reason of acceleration of the maturity or prepayment of the loan, to receive or collect interest or other charges that constitute interest in excess of the highest rate allowed by applicable law on the principal or on a monetary obligation incurred to protect the property described above authorized by the Security Instrument, and in no event shall I be obligated to pay interest in excess of such rate.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on **March 1, 2005** .

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **February 1, 2035** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

will make my monthly payments at: **505 City Parkway West, Suite 100, Orange, CA 92868**

or at a different place if required by the Note Holder.

**(B.) Amount of Monthly Payment**

My monthly payments will be in the amount of U.S. **$684.71** .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates or amount of my monthly payments unless the Note Holder agrees in writing to those changes. Should the Note Holder agree in writing to such changes, my payments thereafter will be payable in substantially equal successive monthly installments

Initials:

*L.C.R   H   G.*

202-1TX (Rev. 01/04)

01/24/2005 8:41:17 AM

## 5. LOAN CHARGES

All agreements between Note Holder and me are expressly limited so that any interest, loan charges, or fees (other than interest) collected or to be collected from me, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this Extension of Credit and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Extension of Credit exceed the permitted limits, then; (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder will make this refund by making a payment to me. **The Note Holder's payment of any such refund will extinguish right of action I might have arising out of such overcharge.**

It is the express intention of the Note Holder and me to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Note, the Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document may be reformed by written notice from Note Holder without the necessity of the execution of any new amendment or new document by me.

The provisions of this Section 5 shall supersede any inconsistent provision of this Note or the Security Instrument.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice by certified mail telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is deposited in the United States mail, postage prepaid and addressed to me at my last known address as shown by the records of the Note Holder. This Note may not be accelerated because of a decrease in the market value of the property described above or because the property owner's default under any indebtedness not evidenced by this Note or the Security Instrument.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law including Section 50(a)(6), Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorneys' fees. I understand that these expenses are not contemplated to be incurred in connection with maintaining or servicing this Extension of Credit.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given in writing by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address. However, if the purpose of the notice is to notify Note Holder of failure by the Note Holder to comply with Note Holder's obligations under this Extension of Credit, or noncompliance with any provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then notice by certified mail is required.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

Subject to the limitations of personal liability described below, each person who signs this Note is responsible for ensuring that all of the Borrower's promises and obligations in this Note are performed, including the payment of the full amount owed. Any person who takes over these obligations is also responsible.

I understand that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that this Note is given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, the Note Holder can enforce its rights under this Note solely against the property described above and not personally against any owner of such property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, I will be personally liable for the payment of any amounts due under this Note. This means that a personal judgment could be obtained against me if I fail to perform my responsibilities under this Note, including a judgment for any deficiency that results from Note Holder's sale of the property described above for an amount less than is owing under this Note.

Initials:

$LCR$ H G

202-2TX (Rev. 01/04)

01/24/2005 8:41:17 AM

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 8 shall not impair in any way the right of the Note Holder to collect all sums due under this Note or prejudice the right of the Note Holder as to any promises or conditions of this Note.

## 9. WAIVERS

**I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.**

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, the Security Instrument, dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. The Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender, if exercise is prohibited by Federal law as of the date of this Security Instrument.

If Lender exercises this option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

## 11. APPLICABLE LAW

This Note shall be governed by the laws of the State of Texas and any applicable Federal law. In the event of any conflict between the Texas Constitution and other applicable law, it is the intent that the provisions of the Texas Constitution shall be applied to resolve the conflict. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions of this Note will remain fully effective and enforceable.

## 12. NO ORAL AGREEMENTS

**THIS NOTE CONSTITUTES A "WRITTEN LOAN AGREEMENT" PURSUANT TO SECTION 26.02 OF THE TEXAS BUSINESS AND COMMERCE CODE, IF SUCH SECTION APPLIES. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) OF THE UNDERSIGNED.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

_____
LIONEL GARCIA ROMERO          - Borrower

_____
HILDA GARCIA                  - Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
AMERIQUEST MORTGAGE COMPANY

BY: _____
WAYNE LEE, President/C.E.O.          - Borrower
BY: _____
KAREN CHRISTENSEN, C.F.O.

PAY TO THE ORDER OF
AMERIQUEST MORTGAGE COMPANY
WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC

BY: _____
WAYNE LEE, PRESIDENT          - Borrower
BY: _____
JOHN P. GRAZER, E.V.P./C.F.O.

202-3TX (Rev. 01/04)

01/24/2005 8:41:17 AM

# EXHIBIT B

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Prepared By:Argent Mortgage Company, LLC
Jonathan Rivera
1701 Golf Road
Rolling Meadows, IL 60008



Y243935
02/07/05  300564535     $54.00

——————— [Space Above This Line for Recording Data] ———————

**THIS SECURITY INSTRUMENT SECURES AN EXTENSION OF CREDIT AS DEFINED BY SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

# TEXAS HOME EQUITY SECURITY INSTRUMENT
## (First Lien)

**This Security Instrument is not intended to finance Borrower's acquisition of the Property.**

## NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated January 24, 2005 , together with all Riders to this document.

**(B) "Borrower"** is LIONEL GARCIA ROMERO and HILDA GARCIA

**FILED FOR RECORD**
**8:00 AM**

**FEB – 7 2005**

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is Argent Mortgage Company, LLC

*Beverly B. Kaufman*
**County Clerk, Harris County, Texas**

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

**TEXAS HOME EQUITY SECURITY INSTRUMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP®-8036(TX) (0310)   Form 3044.1  1/01
(rev. 10/03)

Page 1 of 17   Initials: H.G

VMP Mortgage Solutions (800)521-7291

01/24/2005 8:41:17 AM

RP 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

Lender's address is One City Boulevard West  Orange, CA 92868

Lender includes any holder of the Note who is entitled to receive payments under the Note. Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Argent Mortgage Company, LLC
. Trustee's address is
One City Boulevard West, Suite 1700  Orange, CA 92868

**(E) "Note"** means the promissory note signed by Borrower and dated January 24, 2005
The Note states that Borrower owes Lender ninety-two thousand and 00/100
Dollars
(U.S. $ 92,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2035                  .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Extension of Credit"** means the debt evidenced by the Note, as defined by Section 50(a)(6), Article XVI of the Texas Constitution and all the documents executed in connection with the debt.
**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower *[check box as applicable]*:

☐ Texas Home Equity Condominium Rider              ☐ Other:
☒ Texas Home Equity Planned Unit Development Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Extension of Credit does not qualify as a "federally related mortgage loan" under RESPA.



VMP®-8036(TX) (0310)                Page 2 of 17                L C R    Initials: H-G        Form 3044.1  1/01 (rev. 10/03)

01/24/2005 8:41:17

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Extension of Credit, and all extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described Property located in the
     County     of     HARRIS     :
    [Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 114-691-001-0084-001:001    which currently has the address of
718 SAINT EDWARDS GREEN DRIVE             [Street]
HOUSTON           [City], Texas 77015   [Zip Code]
("Property Address"):

  TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"; provided however, that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

  Borrower and Lender covenant and agree as follows:
  **1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,

-8036(TX) (0310)         Page 3 of 17    Initials:   Form 3044.1   1/01 (rev. 10/03)
                   01/24/2005 8:41:17

Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Extension of Credit current. Lender may accept any payment or partial payment insufficient to bring the Extension of Credit current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Extension of Credit current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 5. These items are called "Escrow Items." At origination or at any time during the term of the Extension of Credit, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender




and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

 -8036(TX) (0310)
®

Page 5 of 17   $LCR$   Initials:  H. G.   Form 3044.1   1/01 (rev. 10/03)

01/24/2005  8:41:17

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Extension of Credit.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Extension of Credit. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Extension of Credit, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

 

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower now occupies and uses the Property as Borrower's Texas homestead and shall continue to occupy the Property as Borrower's Texas homestead for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower's actions shall constitute actual fraud under Section 50(a)(6)(c), Article XVI of the Texas Constitution and Borrower shall be in default and may be held personally liable for the debt evidenced by the Note and this Security Instrument if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan or any other action or inaction that is determined to be actual fraud. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as a Texas homestead, the representations and warranties contained in the Texas Home Equity Affidavit and Agreement, and the execution of an acknowledgment of fair market value of the property as described in Section 27.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien



which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. No powers are granted by Borrower to Lender or Trustee that would violate provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution or other Applicable Law.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages,




Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding which is not commenced as a result of Borrower's default under other indebtedness not secured by a prior valid encumbrance against the homestead, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Security Instrument Execution; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any person who signs this Security Instrument, but does not execute the Note: (a) is signing this Security Instrument only to mortgage, grant and convey the person's interest in the Property under the terms of this Security Instrument or to comply with the requirements of Section 50(a)(6)(A), Article XVI of the Texas Constitution; (b) is not obligated to pay the sums secured by this Security Instrument and is not to be considered a guarantor or surety; (c) agrees that this Security Instrument establishes a voluntary lien on the homestead and constitutes the written agreement evidencing the consent of each owner and each owner's spouse; and (d) agrees that Lender and Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of the Note.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Extension of Credit Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials. *H, G*

-8036(TX) (0310)
®

*L C R*   Form 3044.1   1/01 (rev. 10/03)

01/24/2005  8:41:17 AM

If the Extension of Credit is subject to a law which sets maximum Extension of Credit charges, and that law is finally interpreted so that the interest or other Extension of Credit charges collected or to be collected in connection with the Extension of Credit exceed the permitted limits, then: (a) any such Extension of Credit charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender will make this refund by making a payment to Borrower. **The Lender's payment of any such refund will extinguish any right of action Borrower might have arising out of such overcharge.**

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail (but, by certified mail if the notice is given pursuant to Section 19) to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the laws of Texas. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copies.** Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses, insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance; Lender's Right-to-Comply.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Extension of Credit is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. For example, Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution, generally provides that a lender has 60 days to comply with its obligations under the extension of credit after being notified by a borrower of a failure to comply with any such obligation. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.





-8036(TX) (0310)          Page 11 of 17   *L C R*   Initials: _HiG_   Form 3044.1   1/01 (rev. 10/03)

01/24/2005  8:41:17 AM

It is Lender's and Borrower's intention to conform strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution.

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower, or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply, as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit. Borrower will cooperate in reasonable efforts to correct any failure by Lender to comply with Section 50(a)(6), Article XVI of the Texas Constitution.

In the event that, for any reason whatsoever, any obligation of Borrower or of Lender pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this Section 19, and the document may be reformed, by written notice from Lender, without the necessity of the execution of any amendment or new document by Borrower, so that Borrower's or Lender's obligation shall be modified to conform to the Texas Constitution, and in no event shall Borrower or Lender be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Lender and Borrower are expressly limited so that any interest, Extension of Credit charge or fee collected or to be collected (other than by payment of interest) from Borrower, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by Applicable Law.

It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Note, this Security Instrument or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by Applicable Law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document may be reformed, by written notice from Lender, without the necessity of the execution of any new amendment or new document by Borrower.

Lender's right-to-comply as provided in this Section 19 shall survive the payoff of the Extension of Credit. The provision of this Section 19 will supersede any inconsistent provision of the Note or this Security Instrument.

**20. Hazardous Substances.** As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

 

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Insofar as allowed by Section 50(a)(6), Article XVI of the Texas Constitution, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, court costs, reasonable attorneys' fees and costs of title evidence.**

**The lien evidenced by this Security Instrument may be foreclosed upon only by a court order. Lender may, at its option, follow any rules of civil procedure promulgated by the Texas Supreme Court for expedited foreclosure proceedings related to the foreclosure of liens under Section 50(a)(6), Article XVI of the Texas Constitution ("Rules"), as amended from time to time, which are hereby incorporated by reference. The power of sale granted herein shall be exercised pursuant to such Rules, and Borrower understands that such power of sale is not a confession of judgment or a power of attorney to confess judgment or to appear for Borrower in a judicial proceeding.**

**22. Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by law. Accordingly, Lender and Trustee shall have all the powers provided herein except insofar as may be limited by the Texas Supreme Court. To the extent the Rules do not specify a procedure for the exercise of a power of sale, the following provisions of this Section 22 shall apply, if Lender invokes the power of sale. Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the

 

time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale. In the event of any conflict between such procedure and the Rules, the Rules shall prevail, and this provision shall automatically be reformed to the extent necessary to comply.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Within a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner, in recordable form, a release of the lien securing the Extension of Credit or a copy of an endorsement of the Note and assignment of the lien to a lender that is refinancing the Extension of Credit. Owner shall pay only recordation costs. **OWNER'S ACCEPTANCE OF SUCH RELEASE, OR ENDORSEMENT AND ASSIGNMENT, SHALL EXTINGUISH ALL OF LENDER'S OBLIGATIONS UNDER SECTION 50(a)(6), ARTICLE XVI OF THE TEXAS CONSTITUTION.**

**24. Non-Recourse Liability.** Lender shall be subrogated to any and all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to execution hereof, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

Subject to the limitation of personal liability described below, each person who signs this Security Instrument is responsible for ensuring that all of Borrower's promises and obligations in the Note and this Security Instrument are performed.

Borrower understands that Section 50(a)(6)(C), Article XVI of the Texas Constitution provides that the Note is given without personal liability against each owner of the Property and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud. This means that, absent such actual fraud, Lender can enforce its rights under this Security Instrument solely against the Property and not personally against the owner of the Property or the spouse of an owner.

If this Extension of Credit is obtained by such actual fraud, then, subject to Section 12, Borrower will be personally liable for the payment of any amounts due under the Note or this Security Instrument. This means that a personal judgment could be obtained against Borrower, if Borrower fails to perform Borrower's responsibilities under the Note or this Security Instrument, including a judgment for any deficiency that results from Lender's sale of the Property for an amount less than is owing under the Note, thereby subjecting Borrower's other assets to satisfaction of the debt.

If not prohibited by Section 50(a)(6)(C), Article XVI of the Texas Constitution, this Section 24 shall not impair in any way the lien of this Security Instrument or the right of Lender to collect all sums due under the Note and this Security Instrument or prejudice the right of Lender as to any covenants or conditions of the Note and this Security Instrument.

**25. Proceeds.** Borrower has not been required to apply the proceeds of the Extension of Credit to repay another debt except a debt secured by the Property or debt to another lender.

 -8036(TX) (0310)

Page 14 of 17    *L C R*    

01/24/2005 8:41:17 AM

**26. No Assignment of Wages.** Borrower has not assigned wages as security for the Extension of Credit.

**27. Acknowledgment of Fair Market Value.** Lender and Borrower have executed a written acknowledgment as to the fair market value of Borrower's Property on the date the Extension of Credit is made.

**28. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**29. Acknowledgment of Waiver by Lender of Additional Collateral.** Borrower acknowledges that Lender waives all terms in any of Lender's loan documentation (whether existing now or created in the future) which (a) create cross default; (b) provide for additional collateral; and/or (c) create personal liability for any Borrower (except in the event of actual fraud), for the Extension of Credit. This waiver includes, but is not limited to, any (a) guaranty; (b) cross collateralization; (c) future indebtedness; (d) cross default; and/or (e) dragnet provisions in any loan documentation with Lender.





Initials: *Hi G*

01/24/2005  8:41:17

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

**YOU MAY, WITHIN 3 DAYS AFTER CLOSING, RESCIND THIS EXTENSION OF CREDIT WITHOUT PENALTY OR CHARGE.**

_____

Printed Name: _____
        *[Please Complete]*

_____

Printed Name: _____
        *[Please Complete]*

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
LIONEL GARCIA ROMERO         -Borrower

_____ (Seal)
HILDA GARCIA                 -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

RP 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

**STATE OF TEXAS,** *the under signed* **County ss:** *Harris*

Before me ~~Lionel Garcia~~ *EA* on this day personally appeared

*Lionel Garcia Romero and Hilda Garcia*

known to me (or proved to me on the oath of *word*

or through *Driver license* to be the person whose
name is subscribed to the foregoing instrument and acknowledged to me that he/she/they
executed the same for the purposes and considerations therein expressed.

Given under my hand and official seal of office this *24* day of *November 2005*

EDWIN AREVALO
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
JANUARY 27, 2008

Notary Public

My Commission Expires: *1-27-08*

401-17TX (4/02)          Page 17 of 17                    01/24/2005 8:41:17 AM

*LCR*                                                     *H.G-*

RP 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

# TEXAS HOME EQUITY
# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 24th                   day of
January, 2005                     , and is incorporated into and shall be deemed to amend and supplement
the Security Instrument of the same date, given by the undersigned (the "Borrower") to secure Borrower's
Note to Argent Mortgage Company, LLC

(the "Lender") of the same date and covering the Property described in the Security Instrument and located
at: 718 SAINT EDWARDS GREEN DRIVE, HOUSTON, TX  77015

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with
other such parcels and certain common areas and facilities, as described in covenants, conditions, and
restrictions filed in the Real Property records of the county in which the Property is located (the
"Declaration"). The Property is a part of a planned unit development described in the Declaration (the
"PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity
owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses,
benefits and proceeds of Borrower's interest. Insofar as permitted by Section 50(a)(6)(H), Article XVI of
the Texas Constitution, "homestead" shall include the elements of the Property described by this Rider.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii)
any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and
which provides insurance coverage in the amounts (including deductible levels), for the periods, and
against loss by fire, hazards included within the term "extended coverage," and any other hazards,
including, but not limited to, earthquakes and floods, from which Lender requires insurance, then:

(i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly
premium installments for property insurance on the Property; and

(ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is
deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

**TEXAS HOME EQUITY PLANNED UNIT DEVELOPMENT RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP®-8037(TX) (0008)   Form 3150.44 1/01
Page 1 of 3              _LCR_  Initials: _H.G_
VMP MORTGAGE FORMS - (800)521-7291

01/24/2005 8:41:17

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)   the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by Applicable Law, may pay them. Any amounts disbursed by Lender under this Paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS DOCUMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW OR A TITLE COMPANY. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

_____ (Seal)
LIONEL GARCIA ROMERO          -Borrower

_____ (Seal)
HILDA GARCIA                          -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

_____ (Seal)
                                           -Borrower

01/24/2005 8:41:17 AM

 -8037(TX) (0008)          Page 3 of 3          Form 3150.44 1/01

RP 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

Appendix A

LOT 84, IN BLOCK 1, OF RIVIERA EAST, SECTION 4, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 294, PAGE 68 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

FEB - 7 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

**RECORDER'S MEMORANDUM:**
At the time of recordation, this instrument was found to be inadequate for the best photographic reproduction because of illegibility, carbon or photo copy, discolored paper, etc. All blockouts, additions and changes were present at the time the instrument was filed and recorded.

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Prepared By: Argent Mortgage Company,
Jonathan Rivera
1701 Golf Road
Rolling Meadows, IL 60008

*HC*
*$26*

RETURN TO:
NET O
650 N. SAM H   ON PKY   2
       , TX   )

Y243936
02/07/05  300564536

$26.00

RP 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

——————— [To Be Recorded With Security Instrument. Space Above This Line for Recording Data] ———————

# TEXAS HOME EQUITY
# AFFIDAVIT AND AGREEMENT
# (First Lien)

**(Do not sign this Texas Home Equity Affidavit and Agreement until you have executed an Acknowledgment Regarding Fair Market Value, and received and reviewed the Texas Home Equity Note and the Texas Home Equity Security Instrument.)**

State of **TEXAS**

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared   LIONEL GARCIA ROMERO and HILDA GARCIA

**FILED FOR RECORD**
**8:00 AM**

FEB - 7 2005

*Beverly B. Kaufman*

County Clerk, Harris County, Texas

and on oath such individual, or each of them, swears that the following statements are true:

## I.   REPRESENTATIONS AND WARRANTIES:

A. I am a borrower named in the Texas Home Equity Note (the "Note") or the owner or spouse of an owner of the property described in the Texas Home Equity Security Instrument (the "Security Instrument" which

**TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT (First Lien)-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

VMP®-8034(TX) (0310)
Page 1 of 6
VMP Mortgage Solutions (800)521-7291

**Form 3185 1/01**
**(rev.10/03)**

*LCR* Initials: *H.G.*

01/24/2005 8:41:17 AM

term includes any riders to the Texas Home Equity Security Instrument), both bearing date of **January 24, 2005**                     , evidencing and securing an extension of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Extension of Credit") and providing for a lien on the following described property (the "Property") located in HARRIS                                         County, Texas:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

which has the address of: 718 SAINT EDWARDS GREEN DRIVE                                        [Street]
HOUSTON                                 [City], Texas 77015                 [Zip Code] ("Property Address").

    The Property includes all incidental rights in and to the Property including all improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions are included as well as any interest in a planned unit development, condominium project, homeowners' association or equivalent entity owning or managing common areas or facilities associated with the Property. All of the foregoing is referred to herein as the Property, provided however that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.
    The Property does not include any additional real or personal property not included within the definition of homestead in accordance with applicable law including but not limited to Sections 41.002(a), (b), and (c) of the Texas Property Code which provide:

    **Section 41.002 Definition of Homestead**
        (a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon.
        (b) If used for the purposes of a rural home, the homestead shall consist of:
        (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
        (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.
        (c) A homestead is considered to be urban if, at the time the designation is made, the property is:
        (1) located within the limits of a municipality or its extraterritorial jurisdiction or a platted subdivision; and
        (2) served by police protection, paid or volunteer fire protection, and at least three of the following services provided by a municipality or under contract to a municipality: (A) electric; (B) natural gas; (C) sewer; (D) storm sewer; and (E) water.

**B.** I understand that the lender making the Extension of Credit is Argent Mortgage Company, LLC
(the "Lender").

    **C.** The undersigned includes all owners and spouses of owners of the Property and all borrowers named in the Note.



**D.** The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners, and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

**E.** The Extension of Credit is of a principal amount that, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the Property, does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made.

**F.** I have not paid any fee or charge that is not disclosed in the HUD-1 or HUD-1A Settlement Statement.

**G.** Neither the Lender nor any other party has required any additional collateral (real or personal property), other than the Property described in the Security Instrument, to secure the Extension of Credit.

**H.** The Property is not designated for agricultural use as provided by statutes governing property tax, unless such Property is used primarily for the production of milk.

**I.** The Extension of Credit is the only loan made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution that will be secured by the Property at the time the Extension of Credit is funded.

**J.** The Note and Security Instrument have not been signed before the twelfth (12th) day after the later of the date the owner of the Property submitted an application to the Lender, or the Lender's representative for the Extension of Credit, or the date that the Lender, or the Lender's representative provided the owner with a copy of the Notice Concerning Extensions of Credit defined by Section 50(a)(6), Article XVI of the Texas Constitution (the "Notice").

**K.** The Note and Security Instrument have not been signed before one business day after the date that the owner of the Property received a final itemized disclosure of the actual fees, points, interest, costs, and charges that would be charged at closing **or** a bona fide emergency or other good cause exists and the owner of the Property hereby consents to the Lender providing or modifying such final itemized disclosure on the date of the signing of the Note and Security Instrument and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent.

**L.** If I am an owner of the Property, I received the Notice in English. If the discussions with the borrowers named in the Note were conducted primarily in a language other than English, the borrowers named in the Note received from Lender, or Lender's representative, before closing, an additional copy of the Notice translated into the written language in which the discussions were conducted.

**M.** The Extension of Credit is being closed, that is I am signing the loan documents, at the office of the Lender, an attorney at law, or a title company.

**N.** It has been at least one year since the closing date of any other extension of credit made pursuant to Section 50(a)(6), Article XVI of the Texas Constitution secured by the Property, unless (i) this Extension of Credit is a refinance of a prior extension of credit pursuant to Section 50(a)(6), Article XVI of the Texas Constitution, and is being made to cure the failure of any lender or holder of the prior extension of credit to comply with its obligations under the prior extension of credit (referred to here as a cure refinance) or (ii) the prior extension of credit was a cure refinance, in which case it has been at least one year since the closing date of the most recent extension of credit prior to a cure refinance.

**O.** No owner of the Property has been required to apply the proceeds of this Extension of Credit to repay another debt, unless such other debt, if any, is a debt secured by the Property or is a debt to another lender.

**P.** No owner of the Property has been required to assign wages as security for the Extension of Credit.

**Q.** No owner of the Property has signed an instrument in which applicable blanks were left to be filled in. There are no blanks in this Texas Home Equity Affidavit and Agreement, the Note, or the Security Instrument.

**R.** No owner of the Property has signed a confession of judgment or given a power of attorney to the Lender or to a third person to confess judgment or to appear for any owner of the Property in a judicial proceeding.

**S.** To the best of my knowledge and belief, all owners of the Property, after receiving a copy of all documents signed by them, will sign a receipt acknowledging the delivery of such copies.

**T.** I have been notified in the Security Instrument of the right of the owner and the spouse of any owner to rescind the Extension of Credit without penalty or charge within three (3) days after the closing.

**U.** The Lender and each owner of the Property have signed a written acknowledgment as to the fair market value of the Property on the date the Extension of Credit is made.



*L C R*          Initials: *H. G*

V. The Property is not being purchased with any part of the proceeds of the Extension of Credit.

W. Unless Lender otherwise agrees in writing, all borrowers named in the Note shall occupy the Property as their homestead pursuant to the terms of the Security Instrument.

X. I understand that the Extension of Credit is not a form of open-end account that may be debited from time to time or under which credit may be extended from time to time. Lender, at its option, may make monetary advances to protect the Property (i.e. pay real estate taxes, hazard insurance payments, etc.) in accordance with the Security Instrument.

Y. I understand that the Note, Security Instrument, and this Texas Home Equity Affidavit and Agreement define the terms of the Extension of Credit and are to be construed as an entirety.

## II.  AGREEMENT PROVISIONS:
**A. No Personal Liability in the Absence of Actual Fraud.**  I understand that pursuant to Section 50(a)(6)(C), Article XVI of the Texas Constitution the Extension of Credit is without recourse for personal liability against each owner of the Property and the spouse of each owner and that Lender and its successors and assigns can enforce the promises and obligations in the Note and the Security Instrument solely against the Property, unless an owner or spouse of an owner obtains the Extension of Credit by actual fraud.

**B. Inducement and Reliance.**  I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties Section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.

**C. Remedies in the Event of Actual Fraud.**  If any owner of the Property, or the spouse of an owner, obtains the Extension of Credit by actual fraud, then each owner, spouse of each owner and all borrowers named in the Note agree to indemnify and save Lender and its successors and assigns harmless against any loss, costs, damages, attorneys' fees, expenses and liabilities which Lender may incur or sustain in connection with such actual fraud and any court action arising therefrom and will pay the same upon demand. In addition, the borrowers named in the Note may become personally liable for repayment of the Extension of Credit.

**D. Opportunity for Lender to Comply.**  It is agreed that, except as required by law, the Lender or any holder of the Note for the Extension of Credit shall not forfeit any principal or interest on the Extension of Credit by reason of failure by Lender or holder to comply with its obligations under the Extension of Credit, unless the Lender or holder of the Note fails to correct the failure to comply not later than the 60th day after the borrower notifies the Lender or holder of the Note of its failure to comply.

**E. Tax Advice.**  It is agreed that it is the borrower's responsibility to determine any and all aspects of tax considerations related to the Extension of Credit. I have not relied on any tax advice provided by Lender or Lender's representatives. It is my responsibility to seek and obtain independent tax advice.

## III. STATEMENT UNDER OATH

I hereby swear under oath that the representations and warranties referred to and set forth in Section I above are true and correct. I understand that this Texas Home Equity Affidavit and Agreement is part of the Extension of Credit documentation.

**[DO NOT SIGN IF THERE ARE BLANKS LEFT TO BE COMPLETED IN THIS DOCUMENT. THIS TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT MUST BE EXECUTED AT THE OFFICE OF THE LENDER, AN ATTORNEY AT LAW, OR A TITLE COMPANY BY ALL OWNERS OF THE PROPERTY, SPOUSES OF OWNERS, AND BORROWERS NAMED IN THE NOTE. YOU MUST RECEIVE A COPY OF THIS DOCUMENT AFTER YOU HAVE SIGNED IT.]**

_(Borrower or Owner or Spouse of Owner)_
LIONEL GARCIA ROMERO

_(Borrower or Owner or Spouse of Owner)_
HILDA GARCIA

_(Borrower or Owner or Spouse of Owner)_

_(Borrower or Owner or Spouse of Owner)_

_(Borrower or Owner or Spouse of Owner)_

_(Borrower or Owner or Spouse of Owner)_

_(Borrower or Owner or Spouse of Owner)_

_(Borrower or Owner or Spouse of Owner)_

SWORN TO AND SUBSCRIBED before me on this     *24* day of *January* 20*05*

[PERSONALIZED SEAL]

_____
Notary Public



*Edwin Arevalo*
_____
Printed Name of Notary
My Commission Expires: *1-27-08*

## ADVISORY NOTICE

**ALL STATEMENTS IN THE FOREGOING TEXAS HOME EQUITY AFFIDAVIT AND AGREEMENT ARE MADE UNDER OATH. IF ANY SUCH STATEMENT IS MADE WITH KNOWLEDGE THAT SUCH STATEMENT IS FALSE, THE PERSON MAKING SUCH FALSE STATEMENT MAY BE SUBJECT TO CIVIL AND CRIMINAL PENALTIES UNDER APPLICABLE LAW, MAY BE PERSONALLY LIABLE ON THE NOTE AND MAY CAUSE ALL OTHER BORROWERS NAMED IN THE NOTE TO BE PERSONALLY LIABLE ON THE NOTE.**

*LCR*    Initials: *HIG*

-8034(TX) (0310)     Page 6 of 6     01/24/2005 8:41:17 AM    Form 3185   1/01 (rev.10/03)

RP 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

Appendix A

LOT 84, IN BLOCK 1, OF RIVIERA EAST, SECTION 4, AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 294, PAGE 68 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED in the Official Public Records of Real Property of Harris County, Texas on

FEB - 7 2005



COUNTY CLERK
HARRIS COUNTY, TEXAS

RP 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

# VOLUNTARY DESIGNATION OF HOMESTEAD

## (Texas Property Code section 41.005)

Y243937
02/07/05  300564537    $16.00

State of **Texas**
County of **HARRIS**

Before me, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared and on oath such individual, or each of them swears that the following statements are true:

I/We wish to make a Voluntary Designation of Homestead pursuant to Section 41.005 on the Texas Property Code.

I/We are the current record title holder(s) of the following property located in HARRIS County, Texas:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Legal Description
which has the address of:     718 SAINT EDWARDS GREEN DRIVE
                                                    Street

HOUSTON                          TX          77015                    ("Property Address").
City                                   State       Zip Code

The property includes all incidental rights in and to the Property including all improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions are included as well as any interest in a planned unit development, condominium project, homeowners' association or equivalent entity owning or managing common areas or facilities associated with the Property. All of the foregoing is referred to herein as the Property, provided however that the Property is limited to homestead property in accordance with Section 50(a)(6)(H), Article XVI of the Texas Constitution.

The Property does not include any additional real or personal property not included within the definition of homestead pursuant to Section 41.002(a), (b), and (c) of the Texas Property Code which provide:
### § 41.002 Definition of Homestead

(a) If used for the purpose of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of the family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than ten acres of land which may be in one or more lots, together with any improvements thereon.
(b) If used for the purpose of a rural home, the homestead shall consist of:
(1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
(2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be one or more parcels, with the improvements thereon.
(c) A homestead is considered to be rural if, at the time the designation is made, the property is not served by municipal utilities and fire and police protection.

**I/WE HEREBY DESIGNATE THE ABOVE PROPERTY AS OUR FAMILY HOMESTEAD, OR AS THE HOMESTEAD OF A SINGLE ADULT PERSON NOT OTHERWISE ENTITLED TO A HOMESTEAD**, as defined by Sections 41.002 (a), (b), and (c) of the Texas Property Code hereby revoking all other designations of homestead and I/We have made on any other property.

The undersigned includes all owners and spouses of owners of the Property.

## STATEMENT UNDER OATH

I/We hereby swear under oath that the representations and statements made herein are true and correct and that we have voluntarily made this designation of homestead property. I/We understand that when this Voluntary Designation of Homestead is executed by only one person, it shall read as if pertinent verbs, nouns, and pronouns were changed accordingly.

_____          _____
Borrower LIONEL GARCIA ROMERO                Borrower HILDA GARCIA

_____          _____
Borrower                                                          Borrower

SWORN TO AND SUBSCRIBED before me on this ___24___ day of _January_ , _2005_ .

_____
Notary Public, State of TEXAS

Appendix A

LOT 84, IN BLOCK 1, OF RIVIERA EAST, SECTION 4, AN ADDITION IN HARRIS COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 294, PAGE 68 OF THE MAP
RECORDS OF HARRIS COUNTY, TEXAS.

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL
PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the
date and at the time stamped hereon by me; and was duly RECORDED, in the
Official Public Records of Real Property of Harris County, Texas on

FEB - 7 2005

COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED FOR RECORD
8:00 AM

FEB - 7 2005

County Clerk, Harris County, Texas

RP 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

# EXHIBIT C

RP-2020-164413

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **ARGENT MORTGAGE COMPANY L.L.C., WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, (ASSIGNOR)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interests secured thereby, all liens, and any rights due or to become due thereon, to **WELLS FARGO BANK, N.A., AS TRUSTEE FOR PARK PLACE SECURITIES, INC. ASSET-BACKED PASS-THROUGH CERTIFICATES SERIES 2005-WHQ2, WHOSE ADDRESS IS C/O PHH MORTGAGE CORPORATION, 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust bearing the date 01/24/2005, was executed by **LIONEL GARCIA ROMERO AND HILDA GARCIA** and recorded as **Filing # Y243935**, in the records of Real Property of **HARRIS** County, **Texas**.

**IN WITNESS WHEREOF,** this Assignment is executed **on 04/14/2020.**

**ARGENT MORTGAGE COMPANY L.L.C., by CITI RESIDENTIAL LENDING, INC., its Attorney-in-Fact (POA RECORDED: 9/2/2014 INSTR# 20140391381)**

By 

Donna Lee Valenzano
Vice President

STATE OF FLORIDA    COUNTY OF PALM BEACH

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization  on 04/14/2020,  by Donna Lee Valenzano as Vice President of CITI RESIDENTIAL LENDING, INC. as Attorney-in-Fact for ARGENT MORTGAGE COMPANY L.L.C., who, as such Vice President being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Beverly J. Clayton
Notary Public - STATE OF FLORIDA
Commission expires:    NOV 3 0 2021

Notary Public State of Florida
Beverly J Clayton
My Commission GG 164334
Expires 11/30/2021

**Document Prepared By: Robert E. Fletcher - c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

When Recorded Return To: PHH Mortgage Corporation, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

PHH03 411734590 PHH03-LERFCL    T202003-07:48:22 [C-1] FRMTXGI

RP-2020-164413

RP-2020-164413

\# Pages 2

04/16/2020 02:13 PM

e-Filed & e-Recorded in the

Official Public Records of

HARRIS COUNTY

DIANE TRAUTMAN

COUNTY CLERK

Fees   $18.00

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT D

PHH Mortgage Services
PO Box 9117
Temecula, CA  92589-9117



9314 7100 1170 1027 0920 81

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

**RETURN RECEIPT REQUESTED**

Send Payments to:
PHH Mortgage Services
1 Mortgage Way
Mail Stop SV19
Mt Laurel,  NJ 08054

20200109-206

Send Correspondence to:
PHH Mortgage Services
P.O. Box 5452
Mt Laurel,  NJ 08054

HILDA GARCIA
718 SAINT EDWARDS GREEN DR
HOUSTON, TX 77015-3341



XC218{CM}



PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel. 877-744-2506
Fax 856-917-8300

01/08/2020

Sent Via Certified Mail
9314 7100 1170 1027 0920 81

HILDA GARCIA
718 SAINT EDWARDS GREEN DR
HOUSTON, TX 77015-3341

Loan Number:
Property Address:       718 SAINT EDWARDS GREEN DR
                        HOUSTON, TX 77015

### NOTICE OF INTENTION TO FORECLOSE

Dear Customer(s):

PLEASE NOTE THE FOLLOWING IMPORTANT COMMUNICATION REGARDING YOUR
ACCOUNT.

Your payments due on or after 10/01/2019 have not been received by the PHH Mortgage Services for this loan.
As the payments for the loan are past due, the account is in default of the terms of the Note and Mortgage. In
order to avoid foreclosure, a payment must be made for the total amount due. As of the date of this letter, the
following is required to cure the default:

| | | |
|---|---|---|
| Next Payment Due Date: | | 10/01/2019 |
| Total # of Monthly Payments Due: | | 4 |
| Total Monthly Payments Due: | | $2,182.40 |
| Late Charges: | | $141.90 |
| Other Charges: | Other Fees: | $0.00 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.20) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**        **$2,324.30**

It is possible that after payment of the amounts detailed above there may be other fees still due and owing,
including but not limited to other fees, escrow advances or corporate advances that PHH Mortgage Services
paid on your behalf or advanced to your account.

The default can be cured by paying the total amount due so that it is received at the address below by



*Log in to MortgageQuestions.com --- your servicing website connection.*

XC218
Page 1 of 5

9314 7100 1170 1027 0920 81

02/12/2020. Please be aware that if your next payment due date occurs on or before you submit the total amount due to cure the default, your account will not be considered current unless your next payment is made in addition to the Total Amount Due. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

PHH Mortgage Services<br>
Mail Stop SV19<br>
1 Mortgage Way<br>
Mt Laurel,  NJ 08054

If arrangements to cure the delinquency have been made and the agreement is kept, please disregard this notice. If the arrangements are broken, this breach will be enforced.

Failure to cure the default by 02/12/2020 will result in acceleration of the sums secured by the Security Instrument and sale of the property.

You are further informed that you have the right to reinstate this loan after acceleration pursuant to, and subject to, the provisions and limitations of your loan documents and that you have a right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

If you disagree with the assertion that a default has occurred or with the calculation of the amount required to cure the default, please contact Collections Department at 800-330-0423.

If you are unable to bring your account current, PHH Mortgage Services offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a Home Assistance Plan. If you would like to learn more about these programs, you may contact the Loss Mitigations Department at 800-750-2518.

PHH Mortgage Services is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting PHH Mortgage Services authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, PHH Mortgage Services is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, PHH Mortgage Services, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of PHH Mortgage Services at 1 Mortgage Way Mt Laurel,  NJ 08054.

**<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>**

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

We are very interested in assisting you.

As always, we value your business and would appreciate your attention to this matter.

Sincerely,

9314 7100 1170 1027 0920 81

PHH Mortgage Services

If you have any questions, please contact us at 800-330-0423 between the hours of 8:30am-8:30pm Monday through Thursday and Friday and Saturday from 8:30am-5:00pm EST.



**Important Messages**

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

However, to the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**PHH Mortgage Services is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**HUD Counseling:** For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

HUD Consejería: Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoría de vivienda en todo el país que le puede proporcionar asesoramiento sobre las alternativas de ejecución hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprensión de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Línea Directa de HOPE al 1-888-995-HOPE. También puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents:** Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. 501-597b) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 to find out more information. You can also contact us at 800-330-0423 if you have any

9314 7100 1170 1027 0920 81

questions about your rights under SCRA.

**Requests for Information and Notices of Error, including Qualified Written Requests:** If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred:

PHH Mortgage Services
Post Office Box 66002
Lawrenceville, NJ 08648

9314 7100 1170 1027 0920 81

PHH Mortgage Services
PO Box 9117
Temecula, CA  92589-9117



9314 7100 1170 1027 0920 74

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

**RETURN RECEIPT REQUESTED**

Send Payments to:
PHH Mortgage Services
1 Mortgage Way
Mail Stop SV19
Mt Laurel,  NJ 08054

20200109-206

Send Correspondence to:
PHH Mortgage Services
P.O. Box 5452
Mt Laurel,  NJ 08054

LIONEL GARCIA ROMERO
718 SAINT EDWARDS GREEN DR
HOUSTON, TX 77015-3341



XC218{CM}



PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel. 877-744-2506
Fax 856-917-8300

01/08/2020

Sent Via Certified Mail
9314 7100 1170 1027 0920 74

LIONEL GARCIA ROMERO
718 SAINT EDWARDS GREEN DR
HOUSTON, TX 77015-3341

Loan Number:

Property Address:       718 SAINT EDWARDS GREEN DR
                        HOUSTON, TX 77015

### NOTICE OF INTENTION TO FORECLOSE

Dear Customer(s):

PLEASE NOTE THE FOLLOWING IMPORTANT COMMUNICATION REGARDING YOUR ACCOUNT.

Your payments due on or after 10/01/2019 have not been received by the PHH Mortgage Services for this loan. As the payments for the loan are past due, the account is in default of the terms of the Note and Mortgage. In order to avoid foreclosure, a payment must be made for the total amount due. As of the date of this letter, the following is required to cure the default:

| | | |
|---|---|---:|
| Next Payment Due Date: | | 10/01/2019 |
| Total # of Monthly Payments Due: | | 4 |
| Total Monthly Payments Due: | | $2,182.40 |
| Late Charges: | | $141.90 |
| Other Charges: | Other Fees: | $0.00 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.20) |

**TOTAL YOU MUST PAY TO CURE DEFAULT:**       **$2,324.30**

It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that PHH Mortgage Services paid on your behalf or advanced to your account.

The default can be cured by paying the total amount due so that it is received at the address below by



XC218
Page 1 of 5

*Log in to MortgageQuestions.com --- your servicing website connection.*

9314 7100 1170 1027 0920 74

02/12/2020. Please be aware that if your next payment due date occurs on or before you submit the total amount due to cure the default, your account will not be considered current unless your next payment is made in addition to the Total Amount Due. This letter is in no way intended as a payoff statement for your mortgage, it merely states an amount necessary to cure the current default. Please include your loan number and property address with your payment and send to:

PHH Mortgage Services<br>
Mail Stop SV19<br>
1 Mortgage Way<br>
Mt Laurel,  NJ 08054

If arrangements to cure the delinquency have been made and the agreement is kept, please disregard this notice. If the arrangements are broken, this breach will be enforced.

Failure to cure the default by 02/12/2020 will result in acceleration of the sums secured by the Security Instrument and sale of the property.

You are further informed that you have the right to reinstate this loan after acceleration pursuant to, and subject to, the provisions and limitations of your loan documents and that you have a right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

If you disagree with the assertion that a default has occurred or with the calculation of the amount required to cure the default, please contact Collections Department at 800-330-0423.

If you are unable to bring your account current, PHH Mortgage Services offers consumer assistance programs designed to help resolve delinquencies and avoid foreclosure. These services are provided without cost to our customers. You may be eligible for a Home Assistance Plan. If you would like to learn more about these programs, you may contact the Loss Mitigations Department at 800-750-2518.

PHH Mortgage Services is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting PHH Mortgage Services authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, PHH Mortgage Services is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, PHH Mortgage Services, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of PHH Mortgage Services at 1 Mortgage Way Mt Laurel,  NJ 08054.

**Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.**

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

We are very interested in assisting you.

As always, we value your business and would appreciate your attention to this matter.

Sincerely,

9314 7100 1170 1027 0920 74

PHH Mortgage Services

If you have any questions, please contact us at 800-330-0423 between the hours of 8:30am-8:30pm Monday through Thursday and Friday and Saturday from 8:30am-5:00pm EST.



**Important Messages**

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

However, to the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**PHH Mortgage Services is attempting to collect a debt, and any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**HUD Counseling:** For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

HUD Consejería: Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoría de vivienda en todo el país que le puede proporcionar asesoramiento sobre las alternativas de ejecución hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprensión de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Línea Directa de HOPE al 1-888-995-HOPE. También puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents:** Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. 501-597b) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 to find out more information. You can also contact us at 800-330-0423 if you have any

questions about your rights under SCRA.

**Requests for Information and Notices of Error, including Qualified Written Requests:** If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred:

PHH Mortgage Services
Post Office Box 66002
Lawrenceville, NJ 08648

9314 7100 1170 1027 0920 74

# EXHIBIT E

# MACKIE WOLF ZIENTZ & MANN, P.C.
### ATTORNEYS AT LAW
#### PHONE (214) 635-2650  FAX (214) 635-2686

PARKWAY OFFICE CENTER, SUITE 900
14160 NORTH DALLAS PARKWAY
DALLAS, TEXAS 75254
* PLEASE RESPOND TO DALLAS OFFICE

UNION PLAZA
124 WEST CAPITOL, SUITE 1560
LITTLE ROCK, ARKANSAS 72201

13-002809-670-2
March 11, 2020
CERT MAIL
HILDA GARCIA
718 SAINT EDWARDS GREEN DRIVE
HOUSTON, TX 77015

RE:    LOAN NO.▮▮▮▮▮
MWZM NO. 13-002809-670-2

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear HILDA GARCIA,

We have been retained by PHH Mortgage Corporation, Mortgage Servicer for Wells Fargo Bank, N.A., as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates Series 2005-WHQ2, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan.  A servicing agreement between the Mortgagee, whose address is:

Wells Fargo Bank, N.A., as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates Series 2005-WHQ2
C/O PHH Mortgage Corporation
1MORTGAGE WAY MAIL STOP SV-22
MT. LAUREL, NJ 08054

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.  We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note.  Notification was sent that default had occurred in the payment of the Note and that PHH MORTGAGE CORPORATION would accelerate the maturity of the Note if you did not cure the default.  Because of your failure to cure the default, the maturity date of the Note was accelerated effective 03/11/2020.

All unpaid principal and accrued interest on the Note are due and payable at this time.  According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $83,663.75.  As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan.  You may obtain the precise amount due by contacting this firm at **(214) 635-2650**.  Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice.  If you do not, the debt will be assumed valid by the firm.  If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor.  Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

Sincerely yours,

Mackie Wolf Zientz & Mann, P.C.

**MACKIE WOLF ZIENTZ & MANN, P.C.**

ATTORNEYS AT LAW

PHONE (214) 635-2650  FAX (214) 635-2686

| | |
|---|---|
| PARKWAY OFFICE CENTER, SUITE 900 | UNION PLAZA |
| 14160 NORTH DALLAS PARKWAY | 124 WEST CAPITOL, SUITE 1560 |
| DALLAS, TEXAS 75254 | LITTLE ROCK, ARKANSAS 72201 |
| * PLEASE RESPOND TO DALLAS OFFICE | |

13-002809-670-2
March 11, 2020
CERT MAIL
LIONEL GARCIA ROMERO
718 SAINT EDWARDS GREEN DRIVE
HOUSTON, TX 77015

                                        RE:     LOAN NO ▮▮▮▮▮▮▮▮▮▮
                                                MWZM NO. 13-002809-670-2

**NOTICE OF ACCELERATION OF LOAN MATURITY**

Dear LIONEL GARCIA ROMERO,

We have been retained by PHH Mortgage Corporation, Mortgage Servicer for Wells Fargo Bank, N.A., as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates Series 2005-WHQ2, the current Mortgagee of the Note and Deed of Trust related to the above referenced loan.  A servicing agreement between the Mortgagee, whose address is:

Wells Fargo Bank, N.A., as Trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates Series 2005-WHQ2
C/O PHH Mortgage Corporation
1MORTGAGE WAY MAIL STOP SV-22
MT. LAUREL, NJ 08054

and the Mortgage Servicer authorizes the Mortgage Servicer to collect the debt.  We have been employed by our client to represent it in collecting the indebtedness and enforcing the Deed of Trust.

A default occurred under the terms of the Note.  Notification was sent that default had occurred in the payment of the Note and that PHH MORTGAGE CORPORATION would accelerate the maturity of the Note if you did not cure the default.  Because of your failure to cure the default, the maturity date of the Note was accelerated effective 03/11/2020.

All unpaid principal and accrued interest on the Note are due and payable at this time.  According to the Mortgage Servicer's records, the total balance due as of the date of this notice is $83,663.75.  As a result of accrued interest and other charges, the total balance due may be greater on the date of your payment and an adjustment may be required to fully pay off the loan.  You may obtain the precise amount due by contacting this firm at **(214) 635-2650**.  Payment must be made by cashier's check, certified check or money orders.

Federal law allows you to dispute the validity of the debt, or any portion thereof, within thirty days (30) after receipt of this notice.  If you do not, the debt will be assumed valid by the firm.  If you notify the firm in writing within thirty days of receipt of this letter that the debt or any portion of the debt is disputed, the firm will obtain verification of the debt and will mail a copy of the verification to you. On your written request, within the thirty-day period for verification, the firm will provide you with the name and address of the original creditor.  Additionally, all obligors and guarantors have the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and foreclosure.

**ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.**

**THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT THE DEBT AND ANY INFORMATION OBTAINED BY IT WILL BE USED FOR THAT PURPOSE.**

                    Sincerely yours,

                    *Ester Gonzales*

                    Mackie Wolf Zientz & Mann, P.C.